Good morning. The first case we have this morning, first of three this morning, and then we have one this afternoon, is Schwartz v. Colleran et al., number 06-4197. Mr. Caglia? May I proceed? Yes, sir. Good morning, members of the panel. My name is Dennis Caglia. I'm the attorney for Melvin Schwartz, the appellant. Do you wish to reserve any time for rebuttal? Two minutes, please. That'd be great. I'd like to just begin with pointing out one part of the district court opinion before I proceed chronologically thereafter. On page 8 of the district court opinion. Page what, sir? Page 8. Page 8. I'll quote from it, and this is for record purposes. It's in my appendix at page 11. It says, quote, as the magistrate judge pointed out, petitioner's letters and faxes asked appellate counsel to concentrate on certain issues with respect to his appeal, but do not ask him to appeal certain convictions. This is absolutely true. Mr. Schwartz at no time instructed his trial court appellate counsel to appeal, for instance, Bill of Information 2799.3, count 2, charging this, and so on down the road. But your adversary points out that there was a theory as to what was going on here. Some things would be challenged. Some things would be conceded to focus. It seemed that that was the strategy in the trial court. Here in the appellate court, it seems a little bit different. I submit that trial court appellate counsel was given information at the onset of representation that created a duty for him to appeal all three cases. In particular, what Mr. Schwartz does say to trial court appellate counsel in his first letter of December 1st, 1998, at appendix 59, I am pleased to have you agreed to represent me in my appeal. He goes on to say, I know Gene has your check for the balance of your fee, and then says, a single sentence in the aggravated range of 7 1⁄2 to 25 years for essentially a single unlawful act or unlawful video misdemeanors. Well, actually, before we get to the merits, because the argument on that would be it's an act with or acts with two girls or two underage females and also the videotape. I mean, that's what the three appeals are. Correct. He took a timely appeal in March of 1999, did he not, in one of the cases, 2799-97? There was a direct appeal taken in that case. And when the PICRA was filed, PCRA, that said, I want to deal with all three, that was filed, what, two years and five months later in August of 2001? Correct. That's a long time. But his instructions to trial court appellate counsel included those same issues that he raised in the PCRA. I call them his 13 issues. But his point now as to why he didn't follow up was that his one counsel was disbarred. When was counsel disbarred? I couldn't find it in the record. I don't know specifically when the conservator was appointed nor when his file was returned to him through the conservator. When did he find out about it? Mr. Schwartz? Yes. I don't have the answer to that question. So, I mean, but then he's not really hanging his hat on that argument, then, is he? No, this is information he newly discovered now. I thought this was his reasoning for trying to explain why there was a two-year and five-month delay. The counsel that was supposed to take the first appeal was disbarred. Disbarred. And I found out about it way after the fact. But we don't know when he was disbarred and we don't know when he found out about it. What we do know is that information that Mr. Schwartz was sending to his disbarred counsel, his efforts to communicate with disbarred counsel, went unheeded, attached in the appendix are certain copies of certain envelopes that weren't opened and so forth. Also, in the appendix, there are some, I guess, caustic comments from disbarred counsel. Later on in my argument, I want to bring to your attention, for instance, when he says, is this anyone we know? The appeal was filed in 2799. Correct. In March of 99. That was by the counsel who took the appeal was the counsel who was disbarred, is that correct? Correct. If the trial counsel was Alan Tolan, then there was post-verdict and sentencing counsel, which was Arie and Joel Moldavsky. Post-sentence appeal issues were raised by Attorney Mulch, Barry Mulch. He is the disbarred attorney. So Barry Mulch is the disbarred attorney. Correct. He's not, but the appellate counsel actually entered his appearance, what, December of 98? Whatever the docket reflects, I don't have it off the top of my head. So he's the one who took the appeal, actually. It was Barry Mulch. Correct. Actually, it's March the 8th. The appeal of post-verdict motions in 1925 D State and so forth were filed March the 8th by Attorney Mulch. But there were post-sentence motions filed by Attorney Mulch and instructions given to Attorney Mulch, which contained the 13 issues that my client wanted addressed. The most blatant of which that I believe required an appeal in all three cases was the appeal to the discretionary aspects of sentence. Counsel, I had a question. Ordinarily, if we would reverse a district court's denial of a petition for a writ of habeas corpus, we would remand the matter and suppose, for example, it related to some constitutional error at the trial. And the district court would enter an order, and the order would recite that the state is to try him again within 180 days or some period that it sets, failing which it has to dismiss the case and free him, something like that. Now, in this particular case, there was one appeal taken. And I can't see, and since your complaint is that counsel didn't appeal, that appeal was taken and you lost on that appeal. So that you can't get any relief with respect to that particular account, which was the most serious account. So, no matter what we do, I, I was trying to think of the relief we could grant. We could grant the relief of directing the district court to tell the state that if they didn't allow you to appeal the other convictions now, then they would have to dismiss them. You know, vacate the convictions and dismiss it. But that would still leave standing the sentence on the most serious count. Right? In other, in other words, that would still be standing. Now, your brief says that there was an aggregate sentence of seven and a half years to 25 years imprisonment. Correct. What was the sentence on the count that was left? Is that because of consecutive sentences? Or what was the sentence on the count that you can't really attack at this point? The appendix, the bottom of page 37, it indicates in Judge Toll's PCRA opinion that there was the five to 15 year sentence on the most serious offense. There was a two and a half to five year sentence to run concurrently. So shouldn't it have been like seven and a half to 20 as opposed to seven and a half to 25? That's exactly what I said and my opponent, Mr. Kovach, researched it. And there's some sentences that aren't included in the opinion. But on its face, I agree with you that that sentence does not reconcile to seven and a half to 25. What were the sentences again, though? Five to 15 with a concurrent two and a half to five. Okay. And a consecutive two and a half to five. Okay, so that you can get meaningful relief because you're going to be stuck with a five to 15 AAL. Correct. So what we're really discussing here is the consecutive sentence. Correct. And I believe there was an obligation for Mr. Attorney Mulch to appeal that, not only with the first letter that says, you know, the aggregate sentence is harsh and excessive, but he goes on and on to reiterate that. So you could get meaningful relief. See, if everything was concurrent, then it might be that you couldn't get meaningful relief. Correct. I know it's fortunately never in the position, but I guarantee your client would consider that meaningful relief. If he could. So there's no doubt about that. Okay. I just wanted to put it in context. So we're not beating a dead horse here. There's a reality to this case. Correct. And again, after the initial retention of Attorney Mulch, there's some inner office memos with him and his paralegal. And while this is happening on December 13th of 98, again, Appendix 65, my client tells Attorney Mulch, quote, how does toll justify sentencing me in the aggravating range when there were clearly no aggravated charges or aggravating circumstances? End quote. He clearly refers to the misdemeanors on the two and a half to five year sentence on an unappealed case that act as the tail. The state had a somewhat more limited view of what could be a ineffective assistance of counsel than the federal courts did, didn't it? But the state, I think under the state rule, you had to request the appeal. The federal rule might be somewhat broader. Mr. Schwartz clearly requested his appeal, clearly wanted these issues heard. Mr. Schwartz, in my appendix, I refer, begins to correspond with the superior court and actually gets correspondence back from the superior court telling him what he has to do in order to file a pro se amendment to his brief. He then attempts to file his own brief with his issues and the superior court sends it back to him. That's in the appendix. Counsel, of course, we're an appellate court and we review what happened below. Does epidefference apply here? Excuse me, what kind of deference? How do we defer to the lower court decisions? Well, I submit they're in error. I mean, the distinction is that he'd say to appeal, everybody seems to believe that my client said appeal certain issues and not convictions. In effect, the question is sort of on standard of review. Don't we defer to certain findings made? Not under these circumstances. Not when there's the denial of his constitutional right to effective assistance of counsel by not taking these appeals. And with that, the way I see it, did much pass the Strickland test? Was his conduct reasonable? I submit that it wasn't. Was my client prejudiced? I submit that he was. He lost his appeal rights. If you get to the merits, you have a decent case. I mean, that there should have been consultation, et cetera. But in order to get there, you have to show that your client was diligent in pursuing his rights. And that's where I'm hung up. Well, in the appendix at page 35, on February 14, 2000, the Superior Court sends him a letter that says, in close, please find unfiled the amendment to your counsel brief. And you work backwards from there. What led to this attorney-client relationship going south? You'll see the unopened mails, the caustic comments. My client tells Attorney Mulch at one point... Mulch? Mulch. That he's... Appendix, page 183. Please recall I've written to you on two previous occasions requesting a copy of my appeal and sentencing notes. Was he subpoenaed or any records? Was he subpoenaed to testify? No, not at the PCRA. At any level, how about it? No, he was left alone. But isn't that part of the diligence that he has to exhibit? Well, with perfect hindsight, perhaps he should have been called in. But that's sort of like the big enchilada, isn't it? I don't know much about Attorney Mulch, but he had his... If he's subpoenaed, you would think he would show up or somebody would make sure he gets there. I didn't research his status or situation. Why don't we hear from Mr. Kovach and we'll get you back on rebuttal. May it please the Court, my name is Sheldon Kovach. I'm from Delaware County District Attorney's Office in Pennsylvania representing the respondent, in this case the Commonwealth and the appellee before Your Honors. Do you have any idea when Mr. Schwartz knew about the disbarment of his counsel? I do from the standpoint that the PCRA hearing occurred in May of 2002. His counsel, Mr. Jouzelewski, all private attorneys by the way, was aware of Mr. Mulch's status at that time. I don't believe he was disbarred at that time, Your Honor, but he had issues that ultimately would have led to his difficulties. Do you know at the PCRA hearing if there was any discussion with respect to having Mr. Mulch subpoenaed? Oh, absolutely. In part of our position in this brief, we point out that what he proffered in federal court was clearly available to him at the time he had the PCRA hearing in May of 2002. He could have subpoenaed the lawyer's files. They were his files. He could have subpoenaed Mr. Mulch. He didn't either, and that was based on consultation with his privately retained PCRA attorney. At that point, he had the burden of proof and so anyway, he made the strategy or determination that his testimony along with his wife's testimony along with some of the exhibits that were proffered in federal court and attached were introduced at the PCRA hearing because he had copies of these letters that he had sent. I would point out the pages 44 to 49 of the PCRA hearing that was held in May. He was reciting these letters, a number of them, which he attached to his federal, his proffer. So this is not newly discovered evidence and is not even evidence that was not available to him and our position, at least on the second issue, is there's no circumstance that he would be entitled to an evidentiary hearing in federal court where through no fault of the Commonwealth, through a determination that he made with his counsel, he chose not to subpoena Mr. Mutch and he chose not to obtain through a subpoena. When the PCRA hearing took place in May of 2002, you said there was some discussion with regard to the whereabouts or what was going on with Mr. Mutch. To the extent you have any knowledge of it, do you know why there was a decision made not to have him there? Yeah, and that discussion, Your Honor, was off the record with counsel because I did do the hearing. I mean, that discussion, I believe, was with a law at this time. He's got substance abuse issues. I don't know what he would say. I mean, that was the defense attorney's position. I'm sure you did hear the discussion. I raised the point with counsel for the petitioner as to what relief he could get and he agreed that it was sort of narrow. It could only go to an appeal. You know, it could go that he would have a right to appeal on the accounts that weren't appealed. But where he appealed, he lost, that's it. So do you agree that that would be right? Well, I agree, and here's where I agree up to the point of the relief may be, and we disagree that he should be granted relief, that he gets to appeal. First of all, there would be a correction. The sentences on the other two cases that were not appealed and the sentencing sheets were attached in the appendix before the magistrate and the district court. The one girl who was a 12-year-old where the most serious charge he was found guilty of was indecent assault, the sentence was one to five years. On the other case involving the videos where he's videotaping not only himself but a girl who's manipulating herself in a sexual way, the sentence is one and a half to five years. Those are consecutive, so the total is a two and a half to 10 addition to the five to 15. So his total sentence is seven and a half to 25. But where I would disagree, Judge Greenberg, about the relief, those two other cases were what he admitted to at the trial. I mean, when he took the stand... I know it went on the appeal, but that's a different issue as to whether he can appeal. Oh, absolutely. The only relief, but you would be in essence spinning wheels because his strategy at trial was you got me on videotape, you got me saying certain things, I did these things, but I didn't have oral sex. You may have an easy appeal from the point of view of the appellee, but that's a different issue as to maybe he's taking an appeal that's hopeless. Maybe he's coming in here asking for relief and in effect will become meaningless to him. And where I would disagree is that here we're dealing with form over substance. This was one criminal case with three case numbers. He did consult with his attorneys at trial. He not only had a privately retained attorney, but he had an attorney from Delaware. He was a former U.S. attorney who's mentioned in the PCRI hearing who advised on issues. He did consult after he was convicted and he hired the Moldovsky brothers. He then hires Mr. Mutch and then he hires another privately retained attorney. And all during that time, there's not one attorney who preserves any issue dealing with the videotape or the search and seizure of the videotapes. Are you saying that he admitted his guilt in court for the offenses, the convictions that were not appealed? That's correct and he's on tape. Is that on the record? That's on the record. He testified and it's on tape as well where they show the videos of him which confirms what he did. And my point, Your Honor, would be when he decides that he wants to appeal every issue that he has preserved, he hasn't preserved any issues as to the merits on those two other cases.  this is a wheel spinning exercise? Absolutely. I mean, he consults his attorney and the factual finding which I would certainly say under Aetba we must defer to in federal court, the factual finding of the state trial court and the superior court is that after consultation, he does have his right to appeal. He's not denied his right to appeal but because of the determination of what issues are of merit, he takes the appeal on the one case number. But if we get to the merits, the appeal was taken by much, was that correct? Yes, Your Honor. In 99. But doesn't the attorney have an obligation under Flores-Ortega to consult? And he did. We don't know. He never testified. Well, you not only know he consulted because before he's hired and before he files the appeal, he files a number of post-sentence issues which is unusual because normally once you're sentenced, he files post-sentence motions for ineffective assistance of counsel hearing prior to sentencing as to the trial attorney. He files post-sentence motions requesting discovery. He files an additional post-sentence motion asking for the production of certain documents. So through consultation, he does that and then Mr. Schwartz refers to that in a number of his letters. He then files the appeal and he includes, I think, four issues and among the four issues there are ineffective assistance of counsel with 10 sub-issues. So that statement that he files on appeal, we would submit is after consultation and that was a finding of fact that the federal court deferred to based on the superior court and the trial court. Can I ask you, do we apply edpid deference here? Oh, absolutely. You have not only a direct finding of fact by the superior court, but you have an implied finding of fact by the PCRA trial judge where he is saying, well, it just doesn't make sense that he would have pursued this one appeal with more than one case number given the trial strategy that he embarked on and so on. I have a concern that the superior court decision applies to the bright line rule we rejected in Lewis. So in that instance, don't we have to go to de novo review? You don't because you still apply the deference to the factual findings. They did not make an unreasonable termination of the facts based on the PCRA record. That's sort of splitting the issue though. Maybe you start with that fact, but then you have to apply the broader federal rule. Well, not only that, but the fact that they find that he never asked and that there was consultation, whether you apply Flores, Ortega, and then the Lewis v. Johnson rule or their rule, it doesn't matter because based on those facts, you're successful either way. If we granted him relief and the relief was that the state has to allow him to appeal, the appeal would be way out of time. Now, I was a state appellate judge in New Jersey, the appellate division of the superior court. And the fact of the matter is we allowed criminal appeals to be filed years after the conviction because we avoided exactly what's going on here today, to tell you the truth. But would there be any reason why the state courts might say, look, we just can't allow him to appeal because we have a law here or a rule, I don't know how they do it, Pennsylvania, and therefore those counts will have to be dismissed. Or would they allow it? Whatever this court would order certainly would be abided by. We wouldn't order it. We would just say that if they didn't allow it, what the consequences would be. We would never order a state court to understand the appeal. I understand that. I guess the part that I disagree on, if you did order that, is that the federal courts are not an alternative forum to make a factual record. And that's what Mr. Schwartz is attempting to do here. He had a full and adequate opportunity to produce whatever he wanted. And now after the fact, just as he's done throughout this case, he goes on to the next forum and he's added this proffer of all these exhibits and these handwritten letters, which he had and he could have done and should have done at the PCRA level. And the only way that he would get relief is precluded under AEDPA because if he's going to claim that his PCRA counsel was ineffective, of course under case law we know that does not get him around the AEDPA limitation on the evidentiary hearings. So quite frankly, Judge Greenberg, I don't see the benefit to anyone other than the denial of relief in particular because Judge Padova in no way is either on the law or his deference to the factual findings of the state court. So unless you have any other questions, I will yield the rest of the time. I don't have any questions. Thank you very much. I just wanted to bring one last item to the panel's attention that Attorney Mutch did file defendant's post-sentence motions and in his post-sentence motions he included all of Mr. Schwartz's issues that he wanted raised. In the appendix 200, Attorney Mutch refers to the victims, both victims. He refers to both of the young ladies, M.F. and D.B. So Attorney Mutch was on notice on his post-sentence motion that my client wanted these issues and the discretionary aspects of sentencing challenged and then for some reason there was no appeal filed on the remainder. It was that the issue you raise here is distinct from the issue that you would raise in the event of an appeal on the merits should it ever be allowed. Understand that. But counsel says if you get that right, your answer, if you would get that right, you could say to us thanks for nothing because your client in effect confessed to the crimes for which he was convicted and he really would have a very difficult time getting a reversal, an impossible time. Have you given any thought to what the state appeal would raise? The short answer is no, but we're not here to, there are many different ways that could have led to us not being here. A non-pro-tunk reinstatement of his appeal rights. A footnote from the Superior Court stating, by the way, we've reviewed his issues and we find them meritless. Then we could have referred to that saying, well, had they gone up, the Superior Court would have rejected them. There are many different ways that we could have not found ourselves here, but I think it's most important that we recognize we're here to preserve the rule, not necessarily the result. And Shedrick, our opinion, Shedrick, would help you there, but again, you've got to get past the hurdle of showing due diligence. Well, perhaps an evidentiary hearing would help us. All right. Thank you. Thank you to both counsel. We'll take the matter under advisement and call the next case.